PILAR MÉNDEZ MERCADO, demandante y apelante, *v.* SUCRS. DE BLANES, S. EN C., demandada y apelada.

No. 6145.—*Sometido:* Junio 6, 1933. *Resuelto:* Julio 28, 1934.

*M. Acosta Velarde* y *D. Pellón, Jr.*, abogados de la apelante; *Juan B. Soto*, abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

A virtud de moción de *nonsuit*, la Corte de Distrito de San Juan dictó sentencia en favor de la demandada. La demandante sufrió lesiones debido a un impacto con un automóvil perteneciente a la demandada, mas esta última adujo en efecto que la persona responsable del accidente no era agente ni tenía nexo o relación con la corporación demandada.

La demandada, que era una corporación, era agente de la Cotton Spool Co., y estaba domiciliada en Mayagüez. En San Juan tenía una agencia a cargo de Antonio Enrich. De conformidad con un contrato, la demandada proveyó a Enrich de un automóvil para los viajes que este último daba por la isla, y también le suministraba la gasolina. La demandada no le dió *chauffeur* a Enrich ni le autorizó para emplear uno. Enrich guiaba el automóvil él mismo. En cierta ocasión, allá para el 10 de marzo de 1932, mientras se hallaba en Cayey, el automóvil sufrió un accidente y Enrich se vió obligado a dejarlo en dicho pueblo para ser reparado. Un mecánico convino en hacer las reparaciones y en notificarle a Enrich cuando se terminaran éstas, a fin de que Enrich pudiera mandar a buscar el automóvil. Al ser así notificado y por estar muy ocupado, Enrich mandó a José Morales Ayala para que le trajera el automóvil a San Juan. Morales era *chauffeur* y empleado del Garage Popular. Antes de salir, Morales llamó la atención del mecánico hacia el hecho de que el freno de la rueda izquierda trasera hacía más presión que los otros frenos, mas el último no dió importancia a este asunto. Entre Caguas y Cayey, al tratar de aplicar el freno de pedal, Mo-

rales notó que el automóvil se desviaba hacia la izquierda, pero prosiguió. Después de pasar el pueblo de Río Piedras, el automóvil arrolló a la demandante. La prueba tendió a demostrar que a pesar del hecho de que el automóvil estaba haciendo zigzags Morales no se detuvo. Los deberes de Enrich consistían en vender la mercancía de la demandada y a él no se le impusieron directamente ningunos deberes como *chauffeur*.

De la prueba se desprendía tan fuertemente que Enrich no se hallaba en Cayey cuando el automóvil fué entregado a Morales que no discutiremos ciertas supuestas admisiones contenidas en la contestación. De igual modo era enteramente claro que Enrich no se hallaba en el automóvil en el momento del accidente.

La apelante insiste, con abundante cita de autoridades, que el agente de una corporación a cargo de un automóvil tiene autoridad para emplear un subagente. En algunos de estos casos el agente era empleado especialmente como *chauffeur*. La apelada presenta autoridades al efecto de que cuando un agente emplea a otro agente, la subagencia debe ser en la clase de trabajo para el cual el agente ha sido contratado. Desde luego, la demandada sabía que Enrich usaba un automóvil para entregar o vender la mercancía.

Nuestra impresión general es que la agencia de Morales para con Blanes & Co., la demandada, era demasiado remota para establecer una obligación por parte de esta última.

El artículo 1804 del Código Civil provee:

"La obligación que impone el artículo anterior es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder.

"El padre y por muerte o incapacidad de éste, la madre, son responsables de los perjuicios causados por los hijos menores de edad que viven en su compañía.

"Los tutores lo son de los perjuicios causados por los menores o incapacitados que están bajo su autoridad y habitan en su compañía.

"Lo son igualmente los dueños o directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes en

el servicio de los ramos en los que tuvieran empleados, o con ocasión de sus funciones.

"El Pueblo de Puerto Rico es responsable en este concepto cuando obra por mediación de un agente especial; pero no cuando el daño hubiese sido causado por el funcionario a quien propiamente corresponda la gestión practicada, en cuyo caso será aplicable lo dispuesto en el artículo anterior.

"Son, por último, responsables los maestros o directores de artes y oficios respecto a los perjuicios causados por sus alumnos o aprendices, mientras permanezcan bajo su custodia.

"La responsabilidad de que trata este artículo cesará cuando las personas en él mencionadas prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño."

Si lo que se trata de decir es que Blanes & Co., era una empresa dentro del significado de dicho artículo, entonces Morales no era en forma alguna un agente empleado en el servicio del ramo a que Enrich estaba dedicado. Este último no era un *chauffeur* de la compañía. Quizá si Enrich hubiese empleado a Morales como subagente para vender efectos y hubiese permitido que este último usara el automóvil, Morales hubiese podido ser considerado como un sustituto de Enrich.

Aparece más positivamente que Morales fué empleado para realizar un acto enteramente independiente. En otras palabras, él fué empleado para trasladar un automóvil de un lugar a otro. Si por ejemplo el Garage Popular hubiese sido contratado para transportar el automóvil de Cayey a San Juan, no habría surgido cuestión alguna. El hecho de que Morales fuera un *chauffeur* individual, en vez de una corporación dedicada al negocio de arrendamiento de servicios, no puede hacer diferencia alguna.

Algo en el sentido expresado en el párrafo anterior fué dicho en el caso de *Candal* v. *Sociedad de Auxilio Mutuo,* 37 D.P.R. 874, así:

"De acuerdo con la ley según está ahora en vigor, un hombre de negocios que pide por teléfono que le traigan su carro no sería responsable de daños y perjuicios ocasionados por la negligencia de su empleado, el conductor, mientras éste se dirige a la ciudad en cumplimiento de lo solicitado en la llamada. Pero si el mismo carro,

mientras no está siendo utilizado por el mismo dueño, se utiliza para efectuar entregas en conexión con el negocio del dueño, y ocurre un accidente debido a la negligencia del conductor mientras el vehículo está siendo así usado, entonces el dueño es responsable. Si el dueño de una central azucarera envía su carro privado con su *chauffeur* acompañado de un inspector de caña en un viaje de inspección por las fincas de los colonos que sean partes en contratos de molienda o de refacción agrícola efectuados con dicho dueño, éste sería responsable de cualquier accidente que pudiera ocurrir como resultado de la negligencia de su *chauffeur*. Si ocurriere un accidente similar mientras el *chauffeur* del mismo carro se dirigiera a un teatro con el fin de poner el vehículo a disposición del dueño y su familia después de la función, de acuerdo con instrucciones recibidas del dueño, éste no sería responsable. La única base lógica para hacer tal distinción debe hallarse en el hecho de que en todos los casos en que puede hacerse responsable al dueño, el automóvil en cuestión, en el momento del accidente, está obteniendo para el dueño un beneficio pecuniario sobre el dinero invertido en el vehículo y su costo de mantenimiento, incluyendo el ·sueldo del *chauffeur,* mientras que en todos aquellos casos en que puede considerarse que el dueño está exento de responsabilidad, el carro es comprado y sostenido a un gasto considerable no con el fin de obtener un beneficio pecuniario sobre el dinero invertido en él, sino más bien para el solaz, comodidad, conveniencia, placer y regocijo de tal dueño.''

En dicho caso consideramos el de *Vélez* v. *Llavina,* 18 D.P.R. 656, y los artículos 1803 y 1804 del Código Civil.

También se señaló como error el haberse dejado de conceder un nuevo juicio. Este señalamiento se dirigió hasta cierto punto a los hechos, pero sea ello como fuere, no hallamos que se cometiera error.

*La sentencia debe ser confirmada.*